# SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement") is hereby made and entered into by and between RCI PLBG, INC., a New York corporation, on behalf of itself, its agents, assigns, attorneys, heirs, successors, executors and administrators ("RCI"), CHRISTOPHER CHIERCHIO, an individual, on behalf of himself, his agents, assigns, attorneys, heirs, successors, executors and administrators ("Chierchio"), and ROBERT DIMICELI, an individual, on behalf of himself, his agents, assigns, attorneys, heirs, successors, executors and administrators ("DiMiceli") (RCI, Chierchio, and DiMiceli are referred to collectively herein as the "Defendants"), on the one hand, and ALVARO DECTOR, an individual, on behalf of himself, his agents, assigns, attorneys, heirs, successors, executors and administrators ("Dector") and WILSON ROMERO, an individual, on behalf of himself, his agents, assigns, attorneys, heirs, successors, executors and administrators ("Romero") (Dector and Romero are referred to collectively herein as the "Named Plaintiffs"), individually and on behalf of all of the collective action opt-in plaintiffs (the "Collective Action Opt-In Plaintiffs")(the "Named Plaintiffs" and the Collective Action Opt-In Plaintiffs may be referred to collectively herein as the "Plaintiffs"), on the other hand (the Defendants and the Named Plaintiffs, both individually and on behalf of the Collective Action Opt-In Plaintiffs, are referred to collectively herein as the "Parties").

## RECITALS

**WHEREAS**, the Named Plaintiffs, through their attorneys, Slater Slater Schulman LLP, asserted claims against the Defendants for alleged violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.*, as amended, and related regulations (together, the "FLSA"), and the New York Labor Law and related regulations promulgated by the NYS Commissioner of Labor (together, the "NYLL") in an action filed in the United States District Court for the Southern District of New York (the "Court"), entitled Dector, et al. v. RCI PLBG, Inc., et al., Case No. 17-CV-2269 (the "Action"); and

**WHEREAS**, the Parties stipulated to conditional certification of an FLSA collective action, which stipulation was So Ordered on December 4, 2017; and

**WHEREAS**, following the provision of notice as set forth in the FLSA collective action stipulation, 111 other individuals signed and filed Consent to Sue forms with the Court, joining the Action as Collective Action Opt-In Plaintiffs (a complete list of all Collective Action Opt-In Plaintiffs is annexed hereto as Exhibit A); and

**WHEREAS**, by the terms of their signed Consent to Sue Forms, each of the 111 Collective Action Opt-In Plaintiffs designated the Named Plaintiffs as their duly authorized agents to make decisions for them regarding the litigation of the Action, including but not limited to the negotiation of settlement terms and whether to enter into a settlement agreement resolving the Action; and

**WHEREAS**, the Parties attended two separate mediation sessions before Court-appointed mediator Pamela Esterman, Esq., on November 19, 2018 and June 13, 2019, respectively, together with numerous telephone conferences, which resulted in this Agreement; and

**WHEREAS**, the Parties to this Agreement mutually desire to fully resolve and forever settle all claims asserted in the Action by the Named Plaintiffs and the Collective Action Opt-In Plaintiffs, including but not limited to all claims pursuant to the FLSA and the NYLL, for the purpose of avoiding the time, expense and inconvenience of further litigation; and

**WHEREAS**, all Parties to this Agreement are and have been represented by legal counsel at all times throughout the claims and litigation processes, negotiation, preparation and execution of this Agreement, and all Parties have had a full and fair opportunity to consider this Agreement and review all of its terms with the assistance of such counsel; and

**WHEREAS**, all Parties to this Agreement have carefully considered other alternatives to executing this Agreement and have entered into this Agreement knowingly, voluntarily and without coercion; and

**WHEREAS**, the Named Plaintiffs have analyzed and evaluated the merits of the claims asserted against the Defendants and the impact of this Agreement on the Named Plaintiffs and the Collective Action Opt-In Plaintiffs, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Action, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, the Named Plaintiffs are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Named Plaintiffs and the Collective Action Opt-In Plaintiffs.

**NOW THEREFORE**, with the intent to be legally bound hereby and in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all of the Parties hereto,

**IT IS HEREBY AGREED** by and between the Parties as follows:

## AGREEMENT

(1)   <u>Submission of Agreement for Court Approval; Dismissal of the Action With Prejudice</u>. The Parties shall jointly provide this Agreement to the Court for review and approval, together with the proposed Order of Voluntary Dismissal with Prejudice annexed to this Agreement as Exhibit B. This Agreement shall not become final and binding upon the Parties until it has been approved by the Court as a fair and reasonable disposition of the FLSA claims asserted by the Named Plaintiffs and the Collective Action Opt-In Plaintiffs in the Action, and until all of the Named Plaintiffs' and Collective Action Opt-In Plaintiffs' claims asserted in the Action have been dismissed in their entirety with prejudice.  In the event that the Court does not approve this Agreement solely because of a finding that the Named Plaintiff service awards sought by Dector and Romero are excessive, this shall not affect the enforceability of this Agreement, and the Parties shall still be bound by the other terms of the Agreement hereof.  In such a situation, the Court shall be empowered to adjust the Named Plaintiff service awards to Dector and Romero, from the total Settlement Amount to a figure that the Court would find to be fair and reasonable, however, the

total Settlement Amount shall remain unchanged.  In the event that the Court does not approve this Agreement for reasons other than a finding that the Named Plaintiff service awards provided for herein are excessive, then this Agreement shall be null and void, although the parties hereby agree to use their best efforts to address the Court's stated concerns and modify said findings in an amended Settlement Agreement within 30 days of said Court's decision, or as soon as practicable thereafter.

(2)    <u>Settlement Amount; Payments; Breakdown; Pre-Conditions; Tax Treatment</u>.  (a) The Defendants shall pay to the Plaintiffs and their attorneys the gross total sum of **Five Hundred Fifty Thousand and 00/100 Dollars ($550,000.00)** (the "Settlement Amount"), to be paid in sixteen (16) separate, equal monthly installments of Thirty-Four Thousand Three Hundred Seventy-Five and 00/100 Dollars ($34,375.00), with the initial payment due on March 15, 2020, and the subsequent installment payments due on the 15th day of each succeeding month until and including June 15, 2021, on which date the final installment payment shall be due.  In the event that this Agreement has not yet been approved by the Court as of March 15, 2020, then the Defendants shall escrow with their attorneys, Stephen D. Hans & Associates, P.C., the funds representing each installment payment of $34,375.00 for any month occurring from and including March 15, 2020 and any subsequent installment payments that may become due prior to Court approval of this Agreement.  Should the Court subsequently approve this Agreement and dismiss the Action in its entirety with prejudice (other than to keep jurisdiction for enforcement of this agreement), Stephen D. Hans & Associates shall then promptly transmit all such escrowed funds back to the Defendants within ten (10) business days of the Court's approval of this Agreement and the dismissal of the Action in its entirety with prejudice (other than to keep jurisdiction for enforcement of this agreement).  Defendants shall then issue checks representing all amounts due as of the fifteenth (15th) day of the succeeding month, provided that Court approval of this Agreement occurs no less than fifteen (15) days prior to such date.  By way of example, if the Court approves this Agreement and dismisses the Action in its entirety with prejudice in the first fifteen days of a given month, then the first distribution, which shall include all amounts held in escrow, shall be made on the fifteenth (15th) day of the following month.

(b)    The Settlement Amount shall be apportioned as follows:
    i.    the amount of One Hundred Eighty Three Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($183,333.33) shall be payable to Slater Slater Schulman LLP, counsel for the Named Plaintiffs and the Collective Action Opt-In Plaintiffs ("Plaintiffs' Counsel"), as attorney's fees;
    ii.    the amount of Five Thousand Two Hundred Seventy-Five Dollars and Sixty-Eight Cents ($5,275.68) shall be payable to Plaintiffs' Counsel, as costs;
    iii.    the amount of Three Thousand Five Hundred and 00/100 Dollars ($3,500.00) shall be payable to Dector as a Named Plaintiff service award;
    iv.    the amount of Three Thousand Five Hundred and 00/100 Dollars ($3,500.00) shall be payable to Romero as a Named Plaintiff service award;
    v.    the amount of Twenty-Five Thousand and 00/100 Dollars ($25,000.00), shall be payable to Plaintiffs' Counsel to be held in escrow for purposes of payment to the Settlement Administrator for expected administrative

> expenses, with any amounts not expended to be included in the Holdback Amount (as defined in subparagraph 4(d));
>
> vi. the amount of Twenty-Eight Thousand Two Hundred Fifty and 00/100 Dollars ($28,250.00) shall be apportioned to the Plaintiffs as set forth in Section 4(c) below to compensate Plaintiffs for WTPA violations;
>
> vii. the remainder of the Settlement Amount shall be apportioned amongst the Named Plaintiffs and the Collective Action Opt-In Plaintiffs set forth in Exhibit A to this Agreement.

Notwithstanding the foregoing, the amounts set forth in subparagraphs (2)(b)(vi) and (vii) above may be reduced to account for certain Opt-Out Plaintiffs (as defined in subparagraph 2(f), below) and any Non-Responsive Opt-In Plaintiffs (as defined in subparagraph 2(e), below, subject to the limitations set forth therein) who fail to timely satisfy all of the necessary preconditions to receiving a settlement payment.  Furthermore, other than in an event of default, under no circumstances whatsoever shall the Defendants ever be obligated to pay any amount in excess of the $550,000.00 Settlement Amount pursuant to the terms of this Agreement.

   (c)     Any Collective Action Opt-In Plaintiff receiving a total recovery of less than Seven Hundred Fifty and 00/100 Dollars ($750.00) shall receive payment in full of the entire amount to be paid to them in the first settlement payment distribution.  The Named Plaintiffs and all of the remaining Collective Action Opt-In Plaintiffs shall have their designated portions of the Settlement Amount paid out over the course of the full 16-month installment payment plan set forth in subparagraph 2(a), above.  One half of the amount payable to each of the Named Plaintiffs and the Collective Action Opt-In Plaintiffs from the Settlement Amount shall be classified as gross wages, less all legally required withholdings therefrom, to be reported by IRS Form W-2, while the other half shall be classified as liquidated and/or statutory damages to be reported by IRS Form 1099.  All payments to Slater Slater Schulman LLP shall be classified as attorney's fees and costs to be reported by IRS Form 1099.  The Named Plaintiffs and the Collective Action Opt-In Plaintiffs shall be solely responsible for the payment of all federal, state and local taxes due on each of their respective portions of the Settlement Amount, with the sole exception of all legally required tax withholdings made from the portion of the Settlement Amount classified as wages.  As a necessary precondition to receiving any payments pursuant to this Agreement, each of the Named Plaintiffs and the Collective Action Opt-In Plaintiffs must provide Defendants with: (i) a signed Release of Claims form in the form annexed hereto as Exhibit C; and (ii) a properly completed, duly executed IRS Form W-9.  For purposes of satisfying the conditions precedent in the preceding sentence, an electronic signature or "Docusigned" document shall be acceptable by Defendants.  No Collective Action Opt-In Plaintiff shall be entitled to receive any payment pursuant to this Agreement until such time as all necessary preconditions set forth above have been satisfied.    Tax withholdings shall be made from all settlement checks constituting wages based upon withholding allowance information previously on file with Defendants from the time of each Named Plaintiffs' and Collective Action Opt-In Plaintiffs' prior employment by RCI.  In the event that any of the Named Plaintiffs or Collective Action Opt-In Plaintiffs wish for different withholding allowances to apply, such Named Plaintiffs or Collective Action Opt-In Plaintiffs must submit updated IRS Forms W-4 to Defendants prior to the issuance of any settlement checks.

(d)     Subject to the terms set forth in Paragraph (4) herein, the Settlement Administrator will provide Defendants with a payment schedule containing a verification of the check amounts to be paid by Defendants to individual Plaintiffs prior to each settlement payment distribution. Defendants shall issue and deliver all settlement checks via first class mail addressed to the respective Named Plaintiffs and Collective Action Opt-In Plaintiffs, pursuant to the payment distribution information provided by the Settlement Administrator, and will email within ten (10) days of payment of such a report confirming all amounts paid in the current installment, to Plaintiffs' Counsel at jschulman@sssfirm.com.

(e)     If any of the Collective Action Opt-In Plaintiffs fail to provide Defendants with a signed Release of Claims form and a properly completed, duly executed IRS Form W-9 within 120 days of the Court's approval of this Agreement, then such Collective Action Opt-In Plaintiffs (hereinafter the "Non-Responsive Opt-In Plaintiffs") shall finally and irrevocably forfeit any entitlement to receive their allocated portion of the Settlement Amount pursuant to this Agreement. Despite forfeiting their right to receive their allocated portion of the Settlement Amount, Non-Responsive Opt-In Plaintiffs shall nonetheless be irrevocably bound by the all of the terms of this Agreement, including but not limited to the release of claims set forth in Paragraph 3 below.  If the combined individual recovery amounts allocated for such Non-Responsive Opt-In Plaintiffs amount to $20,000.00 or less, then such amount shall be added to the amount set forth in Section 4(d) and shall be included in the Holdback Amount (as defined therein). In the event that the combined individual recovery amounts allocated for such Non-Responsive Opt-In Plaintiffs exceeds $20,000.00, then only $20,000.00 shall be added to the amount set forth in Section 4(d) and shall be included in the Holdback Amount (as defined therein), and the amount in excess of $20,000.00 shall be deducted from the Settlement Amount and shall revert back to Defendants after all installment payments have been made, and Defendants shall be permanently and irrevocably relieved of any obligation to pay such amount to anyone.   Notwithstanding anything to the contrary in this Section (2)(e), the Parties seek to work in good faith to allow maximum participation by the Collective Action Opt-In Plaintiffs, including, without limitation, the reasonable extension of the 120-day participation deadline set forth in this subparagraph 2(e) on an individual basis where good cause has been demonstrated by such an individual.

(f)     Any Collective Action Opt-In Plaintiff who wishes to refuse their allocated individual settlement recovery shall have the opportunity to opt-out of this settlement by filing with the Settlement Administrator a completed and signed opt-out statement (an "Opt-Out Statement") containing all of the information, and complying with all of the requirements, set forth in the notice annexed hereto as Exhibit D, and may seek to enforce their claims separately on an individual basis (each such party, an "Opt-Out Plaintiff").  In order to be timely, any such Collective Action Opt-In Plaintiff wishing to refuse their individual settlement amount and opt out of this settlement must file an Opt-Out Statement so that it is received by the Settlement Administrator no later than 60 days after the Settlement Administrator mails written notification to the Collective Action Opt-In Plaintiffs informing them of the Court's approval of this Agreement, which mailing shall be expected to occur no later than ten (10) days following the Court's approval of this Agreement.  If an Opt-Out Plaintiff who has timely filed an Opt-Out Statement with the Settlement Administrator subsequently files a separate action against Defendants within 30 days of filing the Opt-Out Statement with the Settlement Administrator, the FLSA or NYLL statute of limitations applicable to that Opt-Out Plaintiff's claims shall be tolled and suspended from the date of Court approval of

this Agreement and continuing until 12:01 a.m. on the 31st day after the Opt-Out Statement has been filed with the Settlement Administrator, and if such Opt-Out Plaintiff does file such a separate action within those 30 days, he shall have been deemed to have filed such separate action as of the date of his filing of his Opt-In notice in this Action for purposes of calculating the FLSA or NYLL statute of limitations. Any Collective Action Opt-In Plaintiff who does not timely file an Opt-Out Statement with the Settlement Administrator so that it is received by the Settlement Administrator within 60 days following the date of mailing of the written notice by the Settlement Administrator of the Court's approval of this Agreement shall no longer be permitted to opt out of this Agreement, and shall be irrevocably bound by the all of the terms of this Agreement, including but not limited to the release of claims set forth in Paragraph 3 below, regardless of whether or not any such individual timely complied with their obligations to satisfy all necessary preconditions to receiving a settlement payment, or whether or not they actually received a settlement payment.  The individual recovery amounts allocated for any Opt-Out Plaintiffs shall be deducted from the Settlement Amount in full and shall revert back to Defendants, who shall be permanently and irrevocably relieved of any obligation to pay such amounts to anyone.

(g)    Concurrently with the execution of this Agreement, Defendants shall execute and deliver to Plaintiffs' Counsel affidavits of confession of judgment in the form annexed hereto as Exhibit E (the "Affidavits of Confession"). The executed Affidavits of Confession shall be held in escrow by Plaintiffs' Counsel, and shall not be entered and/or filed at any time unless: (i) the Defendants fail to timely make any of the initial or installment payments by the due dates set forth in subparagraph 2(a), above; (ii) Plaintiffs' Counsel provides written notice to counsel for the Defendants by email and/or fax transmission that the Defendants are in default of their payment obligations pursuant to this Agreement; (iii) ten (10) business days have passed since the receipt of such written notice by counsel for the Defendants and the Defendants have failed to cure such default by making payment in full of the overdue installment payment; and (iv) one of the Grace Periods, as defined in subparagraph 2(h) below, does not apply.  Upon issuance of the checks constituting the final installment payment pursuant to this Agreement, the executed Affidavits of Confession shall then be null and void, and Plaintiffs' Counsel shall promptly destroy the original executed Affidavits of Confession and shall keep no copies thereof in either hardcopy or electronic format.

(h)    Throughout the 16-month installment plan for payment of the Settlement Amount, Defendants shall be permitted four (4) separate 60-day grace periods (the "Grace Periods") for making late payments, which shall be separate of and in addition to the ten (10) business day cure period that applies for each separate installment payment as set forth in subparagraph 2(g), above. With respect to any particular installment payment pursuant to this Agreement, if the Defendants do not make the payment by the due date and the 10-business day cure period expires without the overdue installment payment being made, one of the Grace Periods, if any remain available, shall automatically apply and shall prevent the Named Plaintiffs and Collective Action Opt-In Plaintiffs from holding the Defendants in default, filing the Affidavits of Confession, or otherwise seeking to enforce this Agreement in any way during its 60-day duration.  The 60-day duration of each Grace Period shall be calculated from the due date of the missed installment payment to which it applies.  At no point shall more than one (1) installment payment be overdue at any point in time, otherwise the Named Plaintiffs and Collective Action Opt-In Plaintiffs shall then be entitled to file

the Affidavits of Confession and seek to enforce this Agreement, whether or not Defendants have any remaining Grace Periods available.

(3)   Release of Claims: In consideration for the payment of the Settlement Amount, as well as for other good and valuable consideration, the Named Plaintiffs, individually and as the duly authorized agents for the Collective Action Opt-In Plaintiffs in the Action, on behalf of both the Named Plaintiffs, the Collective Action Opt-In Plaintiffs, and their dependents, heirs, executors, administrators, legal and/or personal representatives, successors, assigns and agents, do hereby knowingly, voluntarily, unconditionally and irrevocably release and forever discharge Chierchio, Lisa Chierchio, DiMiceli, John Bonura, RCI, Liquid Plumbing Corp., Affinity Human Resources, LLC and each and every one of their divisions, affiliates, subsidiaries, parents, franchisors, corporations under common ownership or control, related business entities, predecessors, successors, management companies, assigns, officers, directors, trustees, employees, agents, shareholders, members, administrators, representatives, attorneys, insurers or fiduciaries, past, present or future (hereinafter referred to collectively as the "Releasees"), from any and all claims, known or unknown, suspected or unsuspected, asserted or unasserted, arising under the FLSA, the NYLL, including but not limited to the NYS Wage Theft Prevention Act, and any other statutory, regulatory and/or common law claims for alleged unpaid wages, unpaid minimum wages, unpaid overtime wages, or other compensation, liquidated damages, statutory damages and/or penalties, interest, costs and attorney's fees, based upon any conduct occurring from the beginning of the world to the date of execution of this Agreement.   To the fullest extent permitted by law, the Named Plaintiffs and the Collective Action Opt-In Plaintiffs promise not to sue or bring any charges, complaints or lawsuits related to the claims hereby waived and released against the Releasees in the future, individually or as members of a class or collective action.  This waiver, release and promise not to sue is binding upon the Named Plaintiffs and the Collective Action Opt-In Plaintiffs, and upon each of their respective heirs, legal representatives and assigns.   The provisions of this Paragraph (3) shall not apply to any Opt-Out Plaintiffs.

(4)   Calculation of Individual Payment Amounts.  (a) Defendants have provided Plaintiffs' Counsel with employee time sheet and payroll data, and Plaintiffs' Counsel has provided each Plaintiff with this data and worked to confirm such data with each individual Plaintiff.   The estimated amount of unpaid wage and overtime damages which Plaintiffs claim to be owed to the Collective Action Opt-In Plaintiffs, based upon the records produced by Defendants, is $225,101.87.

(b)   The Parties agree, however, that while the data provided by Defendants appears reliable and consistent, they anticipate that there still may be additional adjustments to be made due to undiscovered discrepancies as of the date hereof.  These reasons might include alleged failures to clock in or out, or alleged software issues.  The Parties hereto agree to work together with each other and the Settlement Administrator (as set forth in Paragraph (6) below) to address any alleged discrepancies which may be raised by individual Plaintiffs upon the presentment of competent and compelling evidence from any such Plaintiffs.

(c)   Additionally, Defendants shall pay each Plaintiff $250.00 for WTPA violations, for a collective amount of $28,250.00.

(d)   <u>Holdback Amount</u>.  A holdback fund (the "Holdback Amount") shall be created by taking all unallocated funds and allocating such funds *pro rata* among the Named Plaintiffs and the Collective Action Opt-In Plaintiffs in such amounts as determined by their respective percentages of the total amount of unpaid wage and overtime damages, as confirmed by the Settlement Administrator.  For purposes of clarification, the Holdback Amount shall be determined after taking into account: (X) any amounts allocated to remediate discrepancies, as determined by the Settlement Administrator pursuant to Section (4)(b) above; (Y) any amounts forfeited by Opt-Out Plaintiffs (as defined in subparagraph 2(f), below) and/or Non-Responsive Opt-In Plaintiffs (as defined in subparagraph 2(e), below, subject to the threshold limitations set forth therein); and (Z) any amount not paid to the Settlement Administrator pursuant to 2(b)(v) above.

(e)   Each Plaintiff shall receive an amount equal to the <u>greater</u> of: (1) (a) the full amount of unpaid wage and overtime damages, based on Defendants' payroll records and possibly supplemented by competent and compelling evidence which may be provided by certain individual Plaintiffs, *plus* (b) their respective portion of the Holdback Amount, *plus* (c) $250.00 for payment of WTPA violations; or (2) $500.00.

(5)   Within ten (10) days following the Court's approval of this Agreement, the Settlement Administrator shall notify the Plaintiffs of the Court's approval and their owed wages, as well as an explanation of the distribution of the Holdback Amount, and that the actual amount they receive shall be not be determined until the allocation of the Holdback Amount has been determined.

(6)   <u>Retention of the Settlement Administrator and Responsibilities of the Settlement Administrator, Defendants and Plaintiffs' Counsel.</u>

(A)   Plaintiffs' Counsel shall engage a qualified and experienced entity that is agreeable to the Defendants to serve as the settlement administrator (the "Settlement Administrator"), who shall be paid entirely out of the Settlement Amount. The Settlement Administrator shall be responsible for:

1.   promptly providing an IRS Form W-9 to Defendants' Counsel following the Settlement Administrators engagement by the parties;

2.   confirming individual award amounts and current mailing addresses with the individual Collective Action Opt-In Plaintiffs;

3.   providing the parties with a payment distribution schedule for each installment date which shall include both w-2 and 1099 amounts for each individual Plaintiff;

4.   copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party;

5.   receiving, reviewing and promptly furnishing to counsel for the Parties copies of any Opt-Out Statements, or other written or electronic

communications from Plaintiffs which the Settlement Administrator receives;

6.    keeping track of Opt-Out Statements including maintaining the original mailing envelope in which the request was mailed;

7.    ascertaining current address and addressee information for all correspondence;

8.    responding to inquiries of Plaintiffs regarding procedures for filing Opt-out Statements;

9.    referring to Plaintiffs' Counsel all inquiries by individual Plaintiffs regarding matters not within the Settlement Administrator's duties specified herein;

10.   responding to inquiries from Plaintiffs' Counsel and Defendants' Counsel consistent with the Settlement Administrator's duties specified herein;

11.   promptly apprising Plaintiffs' Counsel and Defendants' Counsel of the activities of the Settlement Administrator;

12.   maintaining adequate records of its activities, including the dates of the mailing of any correspondence and receipt of Opt-Out Statements, returned mail and other communications and attempted written or electronic communications with the individual Plaintiffs;

13.   providing Defendants' counsel with timely written notice of instructions as to where to send settlement checks and in what amounts to each payee; and

14.   providing an accounting to Plaintiffs' Counsel and Defendants' Counsel following each distribution for how the settlement proceeds shall be distributed; and

15.   such other tasks upon which the Parties mutually agree.

(B)   Defendants shall be responsible for: (i) preparing, drafting and mailing W-2 and 1099 forms and settlement checks, as applicable to Collective Action Opt-In Plaintiffs, in the amounts verified by the Settlement Administrator; (ii) reasonably cooperating with the Settlement Administrator; (iii) providing accurate information necessary to calculate the amounts of the settlement checks; (iv) providing reasonably available data to assist the Settlement Administrator in locating Collective Action Opt-In Plaintiffs; (v) providing additional documents and information as reasonably requested by Plaintiffs' Counsel or the Settlement Administrator in connection with the approval and/or administration of the Agreement, to the extent such documents and/or information are in Defendants' possession, and (vi) providing other reasonably available information related to the administration of the Agreement.

(C)    The Parties will have equal access to the Settlement Administrator. Plaintiffs' Counsel and Defendants agree to use their best efforts to cooperate with the Settlement Administrator and provide reasonable assistance in administering the Agreement.

(7)   <u>Each Party To Bear Its Own Attorney's Fees.</u>  The Parties shall each bear their own attorney's fees, costs, and expenses, except as expressly provided herein.

(8)   <u>Tax Liability</u>. The Named Plaintiffs and Collective Action Opt-In Plaintiffs understand that no federal, state or local income taxes, payroll taxes or other taxes or withholdings have been or will be paid by any of the Releasees or withheld by any of the Releasees on account of or from the Settlement Amount, with the sole exception of the legally required tax withholdings made by Defendants from the portion of the Settlement Amount that is classified herein as wages. The Named Plaintiffs and the Collective Action Opt-In Plaintiffs acknowledge that the Defendants and their counsel do not make and have not made any representations regarding the taxability of such amounts or the necessity for making withholdings therefrom, and the Named Plaintiffs and Collective Action Opt-In Plaintiffs further acknowledge that they have not relied upon any advice or representation by any of the Defendants or their attorneys as to the necessity for withholding from or the taxability of such amounts. The Named Plaintiffs and Collective Action Opt-In Plaintiffs shall be solely responsible for any and all taxes which may be due as a result of their receipt of all of the money paid to them by the Defendants pursuant to this Agreement, with the sole exception of the legally required withholdings made from that portion of the Settlement Amount that is classified herein as wages. The Plaintiffs further agree to accept full, complete, sole and entire responsibility for any tax liability, withholding liability, interest or penalty that may be assessed against or incurred by any of the Releasees or by the Named Plaintiffs or Collective Action Opt-In Plaintiffs, or both, as a result of not withholding taxes from any portion of the money paid to the Named Plaintiffs or the Collective Action Opt-In Plaintiffs pursuant to this Agreement.

(9)   <u>No Admission of Liability</u>.  The Defendants do not admit to any liability or wrongdoing whatsoever on their part or by any individuals acting under their supervision or on their behalf. Neither this Agreement nor the payment or acceptance of the Settlement Amount shall be construed, described or characterized by any of the Parties hereto or by any of their agents or representatives as an admission by the Defendants or by any individuals acting under the Defendants' supervision or on the Defendants' behalf of any liability or wrongdoing or violation of any law, rule, regulation, public policy or contractual provision.

(10)  <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of, and shall be binding upon, the successors and assigns of each of the Parties.

(11)  <u>Entire Agreement</u>.  This Agreement, when signed by all Parties, shall constitute the entire understanding and agreement between the Parties with respect to the settlement of the Named Plaintiffs' and the Collective Action Opt-In Plaintiffs' claims asserted in the Action, and supersedes and cancels any and all prior oral and written agreements, if any, between and among them.

(12)  <u>Modification in Writing</u>. This Agreement may not be altered, amended or modified, nor any of its provisions waived, except by a further agreement in writing signed by all of the Parties or by their respective counsel.

(13)  <u>No Other Assurances</u>. The Named Plaintiffs, individually and on behalf of the Collective Action Opt-In Plaintiffs, acknowledge that, in deciding to execute this Agreement, they have not relied upon any promises, statements, representations or commitments, whether spoken or in writing, made to them by anyone, except for what is expressly stated in this Agreement.

(14)  <u>Notice</u>.  Notice to Defendants shall be made by email to Defendants' attorneys at nshillito@hansassociates.com and fax at 718-275-6704.  Notice to Plaintiffs' Counsel shall be made by email at jschulman@sssfirm.com and fax at 212-922-0907.

(15)  <u>Governing Law</u>.  This Agreement and the rights and obligations of the Parties hereunder are to be governed by and construed and interpreted in accordance with the laws of the State of New York applicable to contracts made and to be performed wholly within New York, without regard to choice or conflict of laws principles.

(16)  <u>Continuing Jurisdiction</u>.  The Parties shall request that the Court retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or enforcement of this Agreement.

(17)  <u>Joint Preparation</u>.  The language of all parts of this Agreement shall in all cases be construed as a whole, extending to it its fair meaning, and not strictly for or against any of the Parties.  The Parties agree that, in consultation with their attorneys, they have jointly prepared and approved the language of the provisions of this Agreement, and that should any dispute arise concerning the interpretation of any provision hereof, neither the Named Plaintiffs nor the Defendants shall be deemed the drafters, nor shall any such language be presumptively construed in favor of or against either the Named Plaintiffs or the Defendants.

(18)  <u>Severability</u>.  If any provision, term or clause of this Agreement, or any part thereof, is declared by any court of competent jurisdiction or any foreign, federal, state, county or local government or any other governmental regulatory or administrative agency, authority or arbitration panel to be invalid, void, unenforceable or against public policy for any reason, such provision, term or clause, or part thereof, shall be deemed severable, such that all other provisions, terms and clauses, or parts thereof, of this Agreement shall remain in full force and effect and shall continue to be valid and binding upon all of the Parties.

(19)  <u>Captions</u>.  Paragraph captions contained in this Agreement have been inserted herein only as a matter of convenience and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

(20)  <u>Counterparts; Execution</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument.  This

Agreement may be executed and delivered with original signatures or by facsimile or PDF-scanned signatures, either of which shall be deemed legally binding as fully as an original signature.

[THIS SPACE INTENTIONALLY LEFT BLANK]

DocuSign Envelope ID: 043BF08E-DDDF-4E1A-8573-6A27C3F6D240

**IN WITNESS WHEREOF**, the Parties hereto have knowingly and voluntarily executed this Agreement before authorized notaries public as of the date set forth beneath their respective signatures below:

**NAMED PLAINTIFFS:**

STATE OF _New York_ )
                     ) ss:
COUNTY OF _Suffolk_ )

I, **ALVARO DECTOR**, being duly sworn, hereby affirm that I have fully reviewed the foregoing Agreement with my attorneys, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language. I further affirm that I have been duly authorized by each of the Collective Action Opt-In Plaintiffs to negotiate and execute this Agreement on their behalf, and that I enter into this Agreement knowingly and voluntarily on behalf of myself and also on behalf of all of the Collective Action Opt-In Plaintiffs in the Action.

                                               ALVARO DECTOR

Sworn to before me this
_____ Day of _6/16/2020_, 2020

_____
Notary Public

LINC LEDER
NOTARY PUBLIC-STATE OF NEW YORK
No. 02LE6202051
Qualified in Suffolk County
My Commission Expires 03-09-2021

STATE OF _New York_ )
                     ) ss:
COUNTY OF _Suffolk_ )

I, **WILSON ROMERO**, being duly sworn, hereby affirm that I have fully reviewed the foregoing Agreement with my attorneys, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language. I further affirm that I have been duly authorized by each of the Collective Action Opt-In Plaintiffs to negotiate and execute this Agreement on their behalf, and that I enter into this Agreement knowingly and voluntarily on behalf of myself and also on behalf of all of the Collective Action Opt-In Plaintiffs in the Action.

                                               WILSON ROMERO

Sworn to before me this
_____ Day of _6/16/2020_, 2020

_____
Notary Public

LINC LEDER
NOTARY PUBLIC-STATE OF NEW YORK   13
No. 02LE6202051
Qualified in Suffolk County
My Commission Expires 03-09-2021

**DEFENDANTS:**

STATE OF NEW YORK      )
                                            ) ss:
COUNTY OF Richmond

I, **ROBERT DIMICELI**, being duly sworn, hereby affirm that I have fully reviewed the foregoing Agreement with my attorneys, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily in both my individual capacity and as an authorized officer of RCI PLBG, INC.

Sworn to before me this
23 Day of June , 2020

_____
Notary Public

_____
ROBERT DIMICELI, Individually and
on behalf of RCI PLBG, INC.

JERI L. SANTIAGO
Notary Public, State of New York
No. 01SA6148004
Qualified in New York County
Commission Expires, May 15, 20 2 2

STATE OF NEW YORK      )
                                            ) ss:
COUNTY OF Richmond

I, **CHRISTOPHER CHIERCHIO**, being duly sworn, hereby affirm that I have fully reviewed the foregoing Agreement with my attorneys, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

Sworn to before me this
23 Day of June , 2020

_____
Notary Public

_____
CHRISTOPHER CHIERCHIO

JERI L. SANTIAGO
Notary Public, State of New York
No. 01SA6148004
Qualified in New York County
Commission Expires, May 15, 20 2 2

14

# EXHIBIT A

**EXHIBIT A – OPT-IN PLAINTIFFS**

**Name**
1.  Adeniyi, Olaniwan
2.  Ahmed, Muhammed
3.  Alexander, Jan
4.  Alfonso, Randolfo
5.  Amoroso, Christian
6.  Araujo, Juan A.
7.  Arias, Eliezer Gil
8.  Atkinson, Shamar
9.  Belli, Erion
10. Blades, Joachin
11. Branch, Ervin
12. Brown, Valencio
13. Cabrera, Johan Francisco
14. Cabrera, Rodolfo
15. Campbell, Gregory
16. Charles, Josh
17. Chiara, Vincent
18. Cintron, Luis
19. Cocos, Adrian
20. Cotto, David
21. De Los Santo, Henry Perez
22. Dector, Alvaro
23. Deppisch, William
24. Diaz, Ruddy
25. DiDonna, Louis
26. Dika, Hektor
27. Dominguez, Delfino
28. Duvernay, Eric
29. Garcia, Domingo
30. Gillespie, Jesse
31. Gilson, Henry
32. Gilson, Ruben Valerio
33. Gonzalez, Oscar
34. Gordon, Demetrius
35. Gouedy, Christopher
36. Granados, Eugenio
37. Hidalgo, Frailyn
38. Irving, Dwight
39. Jones-Reese, Vincent
40. Laureano, Edward
41. Leslie, Terrance
42. Levene, Nkomo
43. Lizardo, Diokle Veron
44. Lopez, Gerson

45. Malcolm, Dwayne
46. Marrero, Jose
47. Marte, Jose
48. Martin, Matthew
49. Martinez, Almando
50. Martinez, Steven
51. Martinez, Wilfredo
52. Matos, Angel Cuevas
53. McCoy, Gregory
54. McCrimmon, Brandon
55. Mena, Corey
56. Mena, George
57. Mendez, Kelvin
58. Merced, Francisco
59. Mills, Jason
60. Mills, Todd
61. Natal, Efrain
62. O'Connor, Mark*
63. Ortiz, Juan
64. Otero-Valentin, Vicente
65. Pacheco, Michael
66. Paez, Rene
67. Peralta, Eric
68. Peters, Brian
69. Plummer, Jason
70. Ponce, Christopher
71. Provitt, Ronnie
72. Puma, Francisco
73. Ramirez, Hermes
74. Ramirez, Jesus
75. Ramirez, Jose
76. Rivera, Amos
77. Rivera, Christopher
78. Robinson, David
79. Rodriguez, Marcos
80. Rolon, Roberto
81. Roman, Matthew
82. Romero, Wilson
83. Roques, Felix
84. Rosado, Anthony
85. Rosado, Hector
86. Rosado, Juelle
87. Rosario, Luis
88. Rosas, Erry
89. Ruiz, Brendon
90. Saffioti, Joseph
91. Salado, German
92. Samura, Ibrahim

93. Sanchez, Teofilo
94. Sanders, Donnell
95. Santana, Daniel
96. Santiago, Jose
97. Santos, Adderly
98. Savage, Courtney
99. Schroeder, Joseph
100. Sherpa, Nima
101. Shuguli, Edwin
102. Soto, Carlos
103. Soto, Justin
104. Stewart, Max
105. Sutton, Kareem
106. Vargas, Robert
107. Vargas, Rodolfo
108. Vasquez, Joshua
109. Vizcaino, Jose
110. Wankowicz, Adam
111. Williams, Rayquan
112. Zamora, Hector
113. Zapata, Anthony

* Mark O'Connor's amount excludes any compensation for damages under New York Labor Law, which he has previously released Defendants from liability.

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ALVARO DECTOR and WILSON ROMERO,
individually, and on behalf of all others similarly
situated,                                                                                    Case No.: 17 Civ. 2269

                              Plaintiffs,

          -against-                                                    **ORDER OF VOLUNTARY**
                                                   **DISMISSAL WITH PREJUDICE**

RCI PLBG, INC., CHRISTOPHER CHIERCHIO
and ROBERT DIMICELI,

                            Defendants.
-----------------------------------------------------------------X

       Upon the joint application of the Named Plaintiffs, individually and on behalf of all Collective Action Opt-In Plaintiffs in this action, and Defendants, by their respective counsel, for entry of an Order of Voluntary Dismissal with Prejudice approving their settlement agreement in this action, and the parties having consented to the entry of this Order; and sufficient cause appearing for the same; after due deliberation; it is HEREBY ORDERED AS FOLLOWS:

       1.      The parties' settlement has been negotiated in good faith and at arm's length by the parties through their respective counsel with the assistance of a private mediator;

       2.      The settlement is approved as a fair and reasonable disposition of the Fair Labor Standards Act claims asserted by the Named Plaintiffs and the Collective Action Opt-In Plaintiffs;

       3.      Accordingly, this action, and all of the claims asserted herein by the Named Plaintiffs and all of the Collective Action Opt-In Plaintiffs, is hereby dismissed in its entirety with prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure;

       4.      The Court shall retain jurisdiction over this matter for purposes of the interpretation and enforcement of the parties' settlement agreement.

                                                  SO ORDERED.

Dated: New York, New York
               _____, 2020            _____

                                           United States Magistrate Judge

# EXHIBIT C

## <u>RELEASE OF CLAIMS</u>

By signing where indicated below, I _____, in consideration for the receipt of my designated portion of the Settlement Amount as set forth in the Parties' Settlement Agreement in the case of <u>Dector, et al. v. RCI PLBG, Inc., et al.</u>, Case No. 17-CV-2269 (the "Action"), as well as for other good and valuable consideration, do hereby knowingly, voluntarily, unconditionally and irrevocably release and forever discharge Christopher Chierchio, Lisa Chierchio, Robert DiMiceli, John Bonura, RCI PLBG, Inc., Liquid Plumbing Corp., Affinity Human Resources, LLC and each and every one of their divisions, affiliates, subsidiaries, parents, franchisors, corporations under common ownership or control, related business entities, predecessors, successors, management companies, assigns, officers, directors, trustees, employees, agents, shareholders, members, administrators, representatives, attorneys, insurers or fiduciaries, past, present or future (hereinafter referred to collectively as the "Releasees"), from any and all claims, known or unknown, suspected or unsuspected, asserted or unasserted, arising under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.*, as amended, and related regulations, the New York Labor Law and related regulations promulgated by the NYS Commissioner of Labor, including but not limited to the NYS Wage Theft Prevention Act, and any other statutory, regulatory and/or common law claims for alleged unpaid wages, unpaid minimum wages, unpaid overtime wages, or other compensation, liquidated damages, statutory damages and/or penalties, interest, costs and attorney's fees, based upon any conduct occurring from the beginning of the world to the date of my execution of this release.  To the fullest extent permitted by law, I promise not to sue or bring any charges, complaints or lawsuits related to the claims hereby waived and released against the Releasees in the future, individually or as a member of a class or collective action.  This waiver, release and promise not to sue is binding upon me and my heirs, legal representatives and assigns.

By signing where indicated below, I also acknowledge that I have received a copy of the Parties' Settlement Agreement, and I hereby agree to be bound by all of the terms set forth therein.

Signature:_____

Print Name:_____

Date Signed: _____

# EXHIBIT D

<u>Opt-Out Notice</u>

IMPORTANT: YOU HAVE 60 DAYS TO "OPT OUT" OF THIS AGREEMENT

You may exclude yourself ("opt-out") from this case if you do not want to receive a settlement payment, and you want to maintain your right to sue Defendants on your own for the claims released by the Settlement. To withdraw from this case, you must mail a written, signed statement to the Settlement Administrator clearly indicating your wish to opt out of the "RCI Collective Action Settlement."  Your name, address, and telephone number must be included in your opt-out letter. To be effective, your opt-out letter must be faxed, emailed, or mailed via First Class United States Mail, postage prepaid, to the address below, and must be received by the Settlement Administrator by [insert date 60 days following the date of mailing by the Settlement Administrator of the notice informing the Collective Action Opt-In Plaintiffs of the Court's approval of the Agreement and notifying each Plaintiff of their allocated share of the Settlement Amount].

> Angeion Group
> _____, PA
> Tel: _____ Fax: _____
> E-Mail: info@_____.com
> RE: RCI Collective Action Settlement

If you timely file an Opt-Out Statement with the Settlement Administrator and you proceed against the Defendants in a separate action against Defendants *within 30 days from the date you filed the Opt-Out Statement with the Settlement Administrator*, the FLSA or NYLL statute of limitations applicable to your claims shall be tolled and suspended as of the date you filed your Opt-In notice, and you shall have been deemed to have filed such separate action as of the date of your filing of your Opt-In notice in this case (<u>Dector, et al. v. RCI PLBG, Inc., et al.</u>, Case No. 17-CV-2269) for purposes of calculating the FLSA or NYLL statute of limitations.

If you fail to opt-out by [insert date 60 days following the date of mailing by the Settlement Administrator of the notice informing the Collective Action Opt-In Plaintiffs of the Court's approval of the Agreement and notifying each Plaintiff of their allocated share of the Settlement Amount], then you will automatically be part of this settlement and will be deemed to have released all wage and hour claims under the federal Fair Labor Standards Act and New York law which have been brought in the lawsuit or that are based on the same facts and circumstances as the claims in the lawsuit, including but not limited to unpaid regular and overtime wage claims, all related wage and hour and wage payment claims, all derivative benefit claims (i.e., claims for benefits, both ERISA and non- ERISA, resulting from alleged failure to pay overtime or other wages) and all interest on such claims, liquidated damages, punitive damages, and/or other damages, attorneys' fees, expenses, and costs.

If you exclude yourself, you will not receive any money from this lawsuit.

# EXHIBIT E

## AFFIDAVIT OF CONFESSION OF JUDGMENT

STATE OF NEW YORK    )
                                : ss.:
COUNTY OF                )

ROBERT DIMICELI, being duly sworn, deposes and says:

1.      I reside at _____. I am an authorized officer of RCI PLBG, Inc., a New York corporation with its principal place of business located at 545 Midland Avenue, Staten Island, New York.

2.      Pursuant to the terms of the settlement agreement (the "Agreement") entered into by the Named Plaintiffs, Collective Action Opt-In Plaintiffs, and Defendants in the case of Dector, et al. v. RCI PLBG, Inc., et al., Case No. 17-CV-2269 (the "Action"), to which this Affidavit is annexed, I hereby confess judgment and authorize entry thereof in New York County against myself individually, and against RCI PLBG, Inc., jointly and severally, in favor of the Named Plaintiffs and Collective Action Opt-In Plaintiffs in the Action for the sum of Seven Hundred Forty-Two Thousand Five Hundred and 00/100 Dollars ($742,500.00) less any amounts already paid by the Defendants prior to defaulting pursuant to the Agreement.

3.      This affidavit of confession of judgment is for a debt justly due to the Named Plaintiffs and Collective Action Opt-In Plaintiffs under the terms of the Agreement, to which this affidavit is annexed, which provides that myself, individually, and RCI PLBG, Inc. are to submit the total sum of Five Hundred Fifty Thousand and 00/100 Dollars ($550,000.00), plus a 35% penalty amounting to One Hundred Ninety-Two Thousand Five Hundred and 00/100 Dollars ($192,500.00) in the event of a default pursuant to the terms of the Agreement, less any amounts already paid by the Defendants prior to defaulting, to the Named Plaintiffs, the Collective Action Opt-In Plaintiffs, and their attorneys.

4.      This affidavit is made upon good and valuable consideration, the sufficiency of which I acknowledge on behalf of myself and on behalf of RCI PLBG, Inc., including, without limitation, the terms and provisions of the Agreement. I hereby represent my understanding that upon the breach of the Agreement by the Defendants and the failure to cure in accordance with the terms thereof, this affidavit may be docketed and entered in the Supreme Court of the State of New York.

By: _____
             ROBERT DIMICELI,
             Individually and on behalf of
             RBI PLBG, Inc.

On _____, 2020, before me personally came ROBERT DIMICELI, to me known, who, by me duly sworn, did depose and say that deponent executed the foregoing Affidavit of Confession of Judgment both in his individual capacity and in his capacity as an authorized officer of RCI PLBG, Inc.


_____
Notary Public

<u>AFFIDAVIT OF CONFESSION OF JUDGMENT</u>

STATE OF NEW YORK    )
                                  : ss.:
COUNTY OF              )

CHRISTOPHER CHIERCHIO, being duly sworn, deposes and says:

1.     I reside at _____.

2.     Pursuant to the terms of the settlement agreement (the "Agreement") entered into by the Named Plaintiffs, Collective Action Opt-In Plaintiffs, and Defendants in the case of Dector, et al. v. RCI PLBG, Inc., et al., Case No. 17-CV-2269 (the "Action"), to which this Affidavit is annexed, I hereby confess judgment and authorize entry thereof in New York County against myself individually, jointly and severally with the separate affidavit of confession executed by Robert DiMiceli and RCI PLBG, Inc., in favor of the Named Plaintiffs and Collective Action Opt-In Plaintiffs in the Action for the sum of Seven Hundred Forty-Two Thousand Five Hundred and 00/100 Dollars ($742,500.00) less any amounts already paid by the Defendants prior to defaulting pursuant to the Agreement.

3.     This affidavit of confession of judgment is for a debt justly due to the Named Plaintiffs and Collective Action Opt-In Plaintiffs under the terms of the Agreement, to which this affidavit is annexed, which provides that myself, individually, Robert DiMiceli, and RCI PLBG, Inc. are to submit the total sum of Five Hundred Fifty Thousand and 00/100 Dollars ($550,000.00), plus a 35% penalty amounting to One Hundred Ninety-Two Thousand Five Hundred and 00/100 Dollars ($192,500.00) in the event of a default pursuant to the terms of the Agreement, less any amounts already paid by the Defendants prior to defaulting, to the Named Plaintiffs, the Collective Action Opt-In Plaintiffs, and their attorneys.

4.     This affidavit is made upon good and valuable consideration, the sufficiency of which I acknowledge, including, without limitation, the terms and provisions of the Agreement.  I hereby represent my understanding that upon the breach of the Agreement by the Defendants and the failure to cure in accordance with the terms thereof, this affidavit may be docketed and entered in the Supreme Court of the State of New York.

By: _____
            CHRISTOPHER CHIERCHIO

On _____, 2020, before me personally came CHRISTOPHER, to me known, who, by me duly sworn, did depose and say that deponent executed the foregoing Affidavit of Confession of Judgment in his individual capacity.

_____
    Notary Public